MICHAEL BAILEY
United States Attorney
District of Arizona

MONA SAHAF
DC State Bar No. 497854
Email: mona.sahaf@usdoj.gov
Trial Attorney
Human Rights and Special Prosecutions Section
U.S. Department of Justice
1301 New York Ave., NW
Washington, DC 20005
Telephone: 202-262-6511

PETER SEXTON
Arizona State Bar No. 011089
Email: peter.sexton@usdoj.gov
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-19-00200-PHX-DLR |
|---|---|
| Plaintiff, | **GOVERNMENT'S CONSOLIDATED PLEADING: ADDRESSING ITS SENTENCING RECOMMENDATION, REQUEST FOR VARIANCE, AND RESPONSE TO DEFENDANT'S PSR OBJECTIONS** |
| vs. | |
| Laura Marye Wesley, | |
| Defendant. | |

**1.     Overview**

This is a straightforward case. Defendant Wesley conspired to manufacture and sell inauthentic Native American jewelry to consumers. While the financial harm is difficult to quantify, there was real damage done to Indian artisans, defrauded customers, and at least one retail store that was duped through this scheme for many years. And Defendant Wesley played an important role in this fraudulent enterprise.

The government does not seek incarceration. Defendant Wesley recently lost her father, had a child, resolved this matter expeditiously, was debriefed by the government, has no prior convictions, and was raised by a father who got her into this dishonest line of business in the first place. Mostly, however, it is the Covid-19 situation that warrants a variance for her. Non-incarceration alternatives would be far more prudent with all that is going on in the world and her life.

**2.  Sentencing Calculation**

   **a.  Base Offense Level**

Defendant thinks the BOL should be a level 6 and not a 7 (¶¶ 131, 136). Section 2B1.1, in its Commentary at 2(A) [discussing application of subsection (a)(1)], states that in applying § 2B1.1(a) that "… (ii) in the case of a conviction for conspiracy, … this guideline is the appropriate guideline for the offense the defendant was convicted of conspiring … to commit." Here, Defendant Wesley conspired to commit mail and wire fraud – both 20-year felonies. Thus, we agree with Probation's assessment that her BOL level is 7, not 6.

   **b.  Role in the Offense**

Defendant objects to a three-level enhancement for her role in the offense (¶ 136). Defendant was involved in all the major aspects of this case. Her father created an illegal manufacturing operation in the Philippines, smuggled protected raw materials abroad, and transported/shipped finished counterfeits illegally back into this country. Defendant Wesley knew of her father's counterfeit designs, smuggled raw materials abroad, communicated directly with Filipino workers in person and electronically, and sold and peddled this counterfeit jewelry knowingly to third party merchants and other consumers. She was her deceased father's right-hand person for years, and actively helped him run the operation. The government agrees with Probation's assessment.

   **c.  Overall Sentencing Calculation**

The government agrees with Probation's Total Offense Level computation.

**3.    Sentencing Factors (18 U.S.C. § 3553(a))**

The sentencing factors articulated in § 3553(a) support the scope of the government's downward variance and recommended sentence.

**a.    Offense Conduct**

The PSR describes the offense conduct in great detail (¶¶ 10-122). The conduct was extensive. It is hard to measure how this conduct effected Native American designers, but there is a great deal of anecdotal information to suggest it has greatly eroded the livelihood of many Indian artisans.

**b.    Defendant's History and Characteristics**

Defendant Wesley has no criminal history (¶¶ 143-149). She recently lost her father and gave birth in February to her second child. Overall, her history and characteristics are not troublesome, and other than her conduct in this case, she has been law-abiding and productive.

**c.    Cooperation Efforts**

Defendant Wesley entered into a cooperation plea agreement, and she met with the government while her father was still alive and also facing charges in this matter. She also was in the last stage of her pregnancy, and her father was seriously ill. Our conversation with her was only moderately productive, and her efforts fell short of substantial assistance.

**d.    Nature of the Offense, Promoting Respect, Providing Just Punishment**

The fraud in this particular case is not as serious as some fraudulent schemes. Individual consumers got a counterfeit item, but mostly are unaware that they purchased a counterfeit item of jewelry. These were well-made counterfeits, and defendants used high quality components in the manufacturing process. Consumers were still swindled, but not as significantly as often occurs in other fraudulent enterprises.

The loss falls mostly on Indian artisans and certain retail outfits, who lost business to the counterfeiters. How much was diverted from legitimate crafters is hard to measure, but it certainly is not insignificant. But overall, this type of fraud mostly spread minor damage to many, and more significant, immeasurable harm to only a few. That said, experts

agree that the market for artisanal Native-American goods has suffered due to the influx of cheaper knock-offs imported from abroad.[1]

### e. Affording Adequate Deterrence and Protecting the Public

Deterrence is always important in fraud cases. It is thought that felony convictions in this case will deter others from doing similar frauds. The nature of what was done here does not warrant a term of imprisonment, especially in light of current events.

### f. Avoiding Unwarranted Sentence Disparities

There are few prosecutions of this nature in the federal system. Efforts are being put forth to prosecute more cases of this nature, but there are few cases thus far from which to compare what has been done in the past with what is being suggested here.

### g. The Need for Restitution

Defendant also should be ordered to pay $40,000 in restitution to victims in this case, specifically, the owners of a jewelry store in Scottsdale, Arizona, who were duped into believing that the Defendant's jewelry was Native-made. This amount represents the wholesale value of jewelry that was seized from the victim store in July 2018, in connection

---

[1] *See* Maraya Cornell, *Biggest Native American Art Conspiracy Revealed*, NATIONAL GEOGRAPHIC, March 15, 2018 available at https://www.nationalgeographic.com/news/2018/03/native-american-indian-art-fake-forgery-hopi-zuni0/. "For as long as the Zunis and other indigenous artisans have sold their crafts, they've been undercut by fakes—nonnatives posing as Indians to sell more of their work, factory made goods sold as handmade. But today's fakes include a virtual torrent of knockoffs cheaply manufactured overseas and masquerading as genuine Native made . . . ."

*See also* U.S. Government Accountability Office, (GAO-11-432), *Indian Arts and Crafts: Size of Market and Extent of Misrepresentation Are Unknown*, April 2011, at 1, *available at* https://www.gao.gov/assets/320/317826.pdf. "The sale of goods falsely represented as authentic Indian-produced arts and crafts has been a persistent and potentially growing problem in the United States. At least 1.9 million members of federally recognized Indian tribes live in the United States, some of whom are artisans who create pottery, baskets, rugs, and other types of arts and crafts for sale to wholesalers, retailers, or the public directly at Indian art shows and markets. Misrepresentation by sale of unauthentic products created by non-Indians, including imports from foreign countries, is a matter of great concern to Indian artisans, who may have to reduce their prices or lose sales because of competition from lower-priced imitation products. This could have a potentially significant negative economic effect on the Indian arts and crafts market and, consequently, on the individuals and tribes who rely on this market for income."

with the investigation of this case. Defendant is more likely than most to be able to find work to pay restitution. This is an additional factor to consider under § 3553(a)(7).

### h. A Fine is Warranted

It is recommended that a fine of $25,000 be imposed in addition to restitution. The government would ask that the fine be directed to the Indian Arts and Crafts Board's ("IACB") Special Fund maintained at the U.S. Treasury. This was done in August 2020 in a New Mexico case, in which a $300,000 fine was ordered to be paid in this fashion to the IACB.[2] The New Mexico case also involved defendants who imported jewelry in the Native American style from the Philippines and then misrepresented it to the public as Native-made jewelry. The same type of fine is appropriate here because Defendant Wesley manufactured and sold counterfeits for years, and the Native American community and Native artisans have been the most harmed by this criminal conduct.

### 4. Covid-19 Variance

Defendant's guideline range is 24-30 months. Probation does not recommend custody. In light of the pandemic, the government believes probation is appropriate as well. In addition, defendant just gave birth in February, and it wouldn't make much sense in a case like this to separate a newborn daughter from her mother.

As the Court knows, many white collar offenders in BOP custody have been receiving early release to halfway houses to lessen the populations in the prison system. Many of those have served only half their sentences, and their original sentences were far more significant to what Defendant Wesley is facing in this case. In addition, Compassionate Release motions have flooded the system for early release because of health concerns.

---

[2] *See* USAO District of New Mexico Press Release, "Purveyors of fraudulent Native American-style goods and products sentenced in federal court," August 27, 2020, *available at* https://www.justice.gov/usao-nm/pr/purveyors-fraudulent-native-american-style-goods-and-products-sentenced-federal-court.

For this reason, the United States would ask the Court to vary downward and impose a non-custodial sentence.

**5.     Conclusion**

The United States requests that Ms. Wesley be sentenced to 36 months of probation. She should be further ordered to pay $40,000 in restitution, a fine in the amount of $25,000 to be paid to the IACB of the U.S. Department of the Interior, and not engage in the manufacture or sale of items of jewelry during her term of probation.

Respectfully submitted this 14h day of September, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Peter Sexton*
PETER SEXTON
Assistant U.S. Attorney

BRIAN C. RABBITT
Acting Assistant Attorney General
Criminal Division, U.S. Dept. of Justice

*s/ Mona Sahaf*
MONA SAHAF
Trial Attorney
Criminal Division, U.S. Dept. of Justice

# CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Seth Apfel
Attorney for Defendant Wesley

*s/ Mona Sahaf*
Department of Justice, Criminal Division