FILED _____ _X_ LODGED
_____ RECEIVED _____ COPY

JAN 0 6 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY___SMIT___ DEPUTY

_✓_ FILED _____ LODGED
_____ RECEIVED _____ COPY

OCT 0 3 2020

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1   MICHAEL BAILEY
    United States Attorney
2   District of Arizona

3   PETER SEXTON
    Assistant U.S. Attorney
4   Arizona State Bar No. 011089
    Email: peter.sexton@usdoj.gov
5
    MONA SAHAF
6   Trial Attorney, Criminal Division
    Human Rights and Special Prosecutions
7   D.C. Bar No. 497854
    Email: mona.sahaf@usdoj.gov
8
    Two Renaissance Square
9   40 N. Central Ave., Suite 1200
    Phoenix, Arizona  85004
10  Telephone: 602-514-7500
    *Attorneys for Plaintiff*
11
12                IN THE UNITED STATES DISTRICT COURT
13                   FOR THE DISTRICT OF ARIZONA
14  United States of America,                    CR-19-00200-PHX-DLR
15                       Plaintiff,
16           vs.                                  **PLEA AGREEMENT**
17                                                **(Cooperation Required)**
18  Laura Marye Wesley, a.k.a. Laura Lott,
    d.b.a. LMN Jewelers and Laura Marye
19  Designs
20                       Defendant.
21          Plaintiff, United States of America, and defendant, Laura Marye Wesley, with the
22  advice and consent of defense counsel, hereby agree to dispose of this matter on the
23  following terms and conditions:
24  **1.   PLEA**
25          Defendant will plead guilty to Count One of the Indictment, charging  defendant
26  with a violation of 18 United States Code (U.S.C.) § 371, Conspiracy to Commit
27  Misrepresentation of Indian-Produced Goods, Mail Fraud, Wire Fraud, and Entry of Good



by Means of False Statements and Smuggling Goods into the United States, a Class D felony offense.

**2.**     **MAXIMUM PENALTIES**

a.      A violation of 18 U.S.C. § 371 is punishable by a maximum fine of $250,000 or twice the pecuniary gain or loss incurred by another, a maximum term of imprisonment of 5 years, or both, and a term of supervised release of three years.  The maximum term of probation is five years.

b.      According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order defendant to:

(1)      make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)      pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)      serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)      pay upon conviction a $100 special assessment for each count to which defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c.      The Court is required to consider the Sentencing Guidelines in determining defendant's sentence.  However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.**     **COOPERATION REQUIRED**

a.      If requested by the United States, defendant shall meet with representatives of the United States at any reasonable time and place and, in such meetings, shall (i) waive the Fifth Amendment privilege against self-incrimination; (ii) answer all questions asked

- 2 -

about any topic whatsoever; and (iii) provide full and complete information about the topics discussed in each interview, including by volunteering information about which no questions are asked.

b.      If requested by the United States, defendant shall deliver to the United States any documents and other items to which defendant has access.

c.      If requested by the United States, defendant shall testify at any time and place and, when testifying, shall not invoke the Fifth Amendment privilege against self-incrimination.

d.      All information, evidence, and testimony provided by defendant, on any topic whatsoever, shall be truthful, honest, candid, and complete with no knowing and material omissions or false statements. Defendant shall not attempt to either protect or implicate any person or entity through false information or omission.

e.      Defendant shall notify the United States as soon as possible of any interactions or contacts with any subject or target of any ongoing criminal investigation, any criminal defendant, or their respective counsel or associates.

f.      Defendant shall not violate any local, state, federal, tribal, or foreign laws. Defendant shall comply with all terms and conditions of defendant's pre-trial release.

g.      Prior to defendant's sentencing, the United States shall in good faith consider moving the Court to depart downward from the Sentencing Guidelines, and if applicable impose a sentence below the level established by law as the minimum sentence, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), respectively.  At sentencing and any other appropriate time, the United States shall bring the nature and extent of defendant's cooperation to the attention of the Court and/or the Federal Bureau of Prisons.

**4.      BREACH OF THE COOPERATION AGREEMENT**

a.      If defendant fails to comply with the Cooperation provisions set forth above, the United States may:

(1)      in its sole and absolute discretion, declare any provision of the Plea Agreement null and void, without giving defendant any right or option to withdraw from

1   the Plea Agreement or the plea of guilty;

2           (2)     recommend any sentence, up to and including the statutory maximum

3   sentence; and

4           (3)     prosecute defendant, or reinstitute prosecution of defendant, for any

5   and all crimes committed by defendant, notwithstanding the Statute of Limitations, the

6   Speedy Trial Act, and any constitutional restrictions in bringing later proceedings.

7        b.    If there is a dispute regarding the obligations of the parties under this

8   agreement, the United States District Court shall determine whether the United States or

9   defendant has failed to comply with this agreement, including whether defendant has been

10  truthful.

11  **5.**     **STIPULATIONS REGARDING SENTENCING**

12       Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree and stipulate:

13       a.    <u>Loss Amount</u>.  Pursuant to U.S.S.G. § 2B1.1, for purposes of calculating the

14  Sentencing Guidelines range, the loss from defendant's unlawful conduct is more than

15  $150,000 but less than $250,000.  The parties agree that the stipulated loss amount is a

16  reasonable estimate of the losses or profits directly attributable to defendant's involvement

17  in the sale of inauthentic Indian-made jewelry.

18       b.    <u>Restitution</u>.  Pursuant to 18 U.S.C. § 3663 and/or 3663A, defendant

19  specifically agrees to pay restitution of no more than $250,000 to Indian artisans and

20  consumers harmed by defendant's acquisition and sale of inauthentic Indian-made jewelry.

21       c.    <u>Assets and Financial Responsibility</u>.  Defendant shall make a full accounting

22  of all assets in which defendant has any legal or equitable interest.  Defendant shall not

23  (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such

24  assets or property before sentencing, without the prior approval of the United States

25  (provided, however, that no prior approval will be required for routine, day-to-day

26  expenditures).  Defendant also expressly authorizes the United States Attorney's Office to

27  immediately obtain a credit report of defendant in order to evaluate defendant's ability to

28  satisfy any financial obligation imposed by the Court.  Defendant also shall make full

1  disclosure of all current and projected assets to the U.S. Probation Office immediately and

2  prior to the termination of defendant's supervised release or probation, such disclosures to

3  be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any

4  purpose.  Finally, if a term of incarceration is imposed, defendant shall participate in the

5  Inmate Financial Responsibility Program to fulfill all financial obligations due and owing

6  under this agreement and the law.

7        d.    <u>Destruction of Seized Inauthentic Jewelry</u>. Defendant agrees to forfeit and

8  destroy all inauthentic/counterfeit Indian-made jewelry seized during the execution of

9  search warrants.  If the seized items can be processed to capture any precious metals and/or

10  gemstones/minerals, any realized value from that processing shall be credited and applied

11  to defendant's restitution obligation.

12  **6.   RECOMMENDATIONS REGARDING SENTENCING**

13        Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend:

14        a.    <u>Acceptance of Responsibility</u>.  If defendant makes full and complete

15  disclosure to the U.S. Probation Office of the circumstances surrounding defendant's

16  commission of the offense, and if defendant demonstrates an acceptance of responsibility

17  for this offense up to and including the time of sentencing, the United States will

18  recommend a two-level reduction in the applicable Sentencing Guidelines offense level

19  pursuant to U.S.S.G. § 3E1.1(a).  If defendant has an offense level of 16 or more, the United

20  States will recommend an additional one-level reduction in the applicable Sentencing

21  Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

22        b.    <u>Low End/Split Sentence</u>. The United States will recommend the low end of

23  the applicable sentencing range, and if a split sentence is available (i.e., Zone C), the

24  government will further recommend that a split sentence be imposed by the Court.  This

25  recommendation does not preclude defendant from asking for a sentence below the

26  recommended Guidelines range, or the government from recommending a lower sentence

27  based upon additional factors learned during the sentencing process.

28

c.   <u>Non-Binding   Recommendations</u>.   Defendant   understands   that recommendations are not binding on the Court.   Defendant further understands that defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

**7.   AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.   This office shall not prosecute defendant for any offenses committed by her, and known by the United States, in connection with the charges in the Indictment.

b.   This agreement does not restrict the actions of the United States in any other district or bind any other United States Attorney's Office or any other section of the Criminal Division of the Department of Justice.   Undersigned counsel for the government are not aware of any federal criminal investigations involving defendant.

**8.   COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.   If the Court, after reviewing this plea agreement, concludes that any provision is inappropriate, it may reject the plea agreement and give defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.   If defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, defendant waives any objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.   Defendant understands that any statements made at the time of defendant's change of plea or sentencing may be used against defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**9.   WAIVER OF DEFENSES AND APPEAL RIGHTS**

Defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that defendant could assert to the indictment; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction,

an order of restitution or forfeiture, the entry of judgment against defendant, or any aspect of defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

10.   **DISCLOSURE OF INFORMATION**

a.      The United States retains the unrestricted right to provide information and make any statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.      Any information, statements, documents, and evidence that defendant provides to the United States pursuant to this agreement may be used against defendant at any time.

c.      Defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)      criminal convictions, history of drug abuse, and mental illness; and

(2)      financial information, including present financial assets or liabilities that relate to the ability of defendant to pay a fine or restitution.

11.   **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately

1    upon judgment, shall be subject to immediate enforcement by the United States, and shall

2    be submitted to the Treasury Offset Program so that any federal payment or transfer of

3    returned property the defendant receives may be offset and applied to federal debts (which

4    offset will not affect the periodic payment schedule).  If the Court imposes a schedule of

5    payments, the schedule of payments shall be merely a schedule of minimum payments and

6    shall not be a limitation on the methods available to the United States to enforce the

7    judgment.

8    **12.   ELEMENTS**

9             To prove the crime of *Conspiracy* to Commit Misrepresentation of Indian-Produced

10   Goods, Mail Fraud, Wire Fraud, and Entry of Good by Means of False Statements and

11   Smuggling Goods into the United States, in violation of *18 U.S.C. § 371*, the government

12   must prove the following elements beyond a reasonable doubt:

13            1.      On or about the period set forth in the Indictment and the factual basis below,

14   in the District of Arizona and elsewhere, there was an agreement between two or more

15   persons to commit the crime of Conspiracy to Commit Misrepresentation of Indian Goods,

16   in violation of 18 U.S.C. § 1159, Mail Fraud, in violation of 18 U.S.C. § 1341, Wire Fraud,

17   in violation of 18 U.S.C. § 1343, and Entry of Goods by Means of False Statements and

18   Smuggling Goods into the United States, in violation of 18 U.S.C. § 542, 545;

19            2.      Defendant became a member of the conspiracy knowing that its object was

20   to commit these two crimes, and to help accomplish both crimes; and

21            3.      Defendant committed at least one overt act, as set forth below, for the

22   purpose of carrying out the conspiracy.

23            The elements for *Misrepresentation of Indian-Produced Goods and Products*, in

24   violation of *18 U.S.C. § 1159*, and one of the objects of the Conspiracy, are:

25            1.      Defendant offered or displayed for sale;

26            2.      A good or product (i.e., jewelry items);

27            3.      In excess of $1000;

28            4.      In a manner that falsely suggested;

5.      That the jewelry good or product was Indian produced, an Indian product, or the product of a particular Indian or Indian arts and crafts organization; and

6.      The Indian, Indian Tribe, or Indian arts and crafts organization, was resident within the United States.

The elements of *Wire Fraud*, in violation of *18 U.S.C. § 1343*, another object of the Conspiracy, are:

1.      Defendant knowingly participated in, executed, or attempted to execute a scheme or artifice to defraud any person, or to obtain any money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts;

2.      The fraudulent pretenses, representations, promises, or omitted facts were material, in that they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3.      The scheme to defraud was in relation to the offer or display for sale of an inauthentic Indian product or good;

4.      Defendant did so knowingly and with intent to defraud, that is, the intent to deceive or cheat; and

5.      Defendant used, or cause to be used, the mails (a private or commercial interstate carrier) to carry out an essential part of the scheme.

The elements of *Mail Fraud*, in violation of *18 U.S.C. § 1341*, another object of the Conspiracy, are:

1.      Defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

2.      The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3.      The scheme to defraud was in relation to the offer or display for sale of an inauthentic Indian product or good;

4.    Defendant did so knowingly and with intent to defraud, that is, the intent to deceive or cheat; and

5.    Defendant used, or caused to be used, the mails to carry out an essential part of the scheme.

The elements of *Entry of Goods by Means of False Statements and Smuggling Goods into the United States*, in violation of 18 U.S.C. §§ 542, 545 another object of the Conspiracy, are:

1.    Defendant knowingly smuggled merchandise into the United States without declaring the merchandise for invoicing as required by United States Customs law;

2.    Defendant knew that the merchandise was of a type that should have been declared; and

3.    Defendant acted willfully with intent to defraud the United States.

**13.   FACTUAL BASIS**

Defendant admits that the following facts are true, and that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt:

*From at least in or about January 2016, through February 2019, in the District of Arizona and elsewhere, defendant Laura Marye Wesley, a.k.a. Laura Lott, d.b.a. LMN Jewelers and Laura Marye Designs, with co-defendants Richard Dennis Nisbet, a.k.a. Dick Denni, d.b.a. Last Chance Jewelers and Dick Denni Designs, Waleed Sarrar, a.k.a. Willie, d.b.a. Scottsdale Jewels LLC, Christian Coxon, a.k.a. Chris, d.b.a. Turquoise River Trading Company, Mency Remedio, Orlando Abellanosa, a.k.a. Erlando and Lando, and Ariel Adlawan Canedo, conspired and schemed, with each other and others, to design jewelry in the Native-American Indian-style; solicit orders for Native-American Indian-style jewelry from retail stores that claimed to specialize in the sale of Native American jewelry; manufacture the jewelry in the Republic of the Philippines ("Philippines") with Filipino labor; import the jewelry from the Philippines to Arizona without indelible*

- 10 -

*markings, as required by law; smuggle jewelry, from the Philippines to Arizona through the U.S. mails in order to avoid inspection at the Port of Entry as required by law; and display, advertise, and sell the jewelry to customers based on false representations that the jewelry items were made by Indians in the United States.*

*To perpetrate the conspiracy and schemes to defraud, the conspirators/co-schemers communicated with each other by phone calls, text messages, and email; used private commercial shipping services such as FedEx, and the U.S. Mail and Philippines Post, to import jewelry from the Philippines to the United States; paid for the jewelry inventory through credit cards, including via web-based credit card processors, and by check; and charged the credit cards of customers who purchased the imported Indian-style jewelry.*

*Defendant Laura Marye Wesley owned and operated LMN Jewelers and Laura Marye Designs, jewelry businesses that specialized in the sale of Native-American-style jewelry; and co-owned and co-operated Last Chance Jewelers with co-defendant Richard Nisbet. Wesley registered LMN Jewelers LLC in or around 2014. Through LMN Jewelers LLC, Wesley manufactured Indian-style jewelry in the Philippines using Filipino labor, imported the jewelry into the United States, and sold the jewelry to various retail businesses in Arizona, Colorado, California, Texas, Minnesota, Utah, and elsewhere. Wesley also sold jewelry on behalf of Last Chance Jewelers and Dick Denni Designs, by receiving imports of the jewelry; communicating with customers about jewelry orders; delivering jewelry to customers in person and by mail; collecting payments from customers; and transferring customer payments to co-defendant Richard Nisbet. Co-defendants, including Wesley:*

    *a.    Designed jewelry to incorporate well-known Indian symbols and motifs;*

    *b.    Failed to indelibly mark the jewelry as being made in the Philippines;*

    *c.    Removed "Made in the Philippines" stickers from bags of imported jewelry;*

    *d.    Smuggled knock-off Native-American-style jewelry into the United States through the Philippines Post and U.S. Postal Service, to avoid inspection by federal authorities at the port of entry, and to avoid paying import duties;*

e.   Wired money from the United States to the Philippines to cover the costs of the Filipino jewelry-making business;

f.   Traveled to the Philippines and worked alongside Filipino factory workers manufacturing the knock-off Native-American-style jewelry;

g.   Received imported knock-off jewelry shipments, and delivered them personally to retail customers in Arizona, California, Colorado, Minnesota, Utah, and Texas;

h.   Displayed and offered for sale for $1,000 and more, jewelry manufactured in the Philippines, in a manner that suggested the jewelry was Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, resident within the United States;

i.   Collected payments from customers for imported Native-American-style jewelry by credit card, including through web-based credit card payment processors such as Square, Inc. and Total System Services (TSYS);

j.   Collected payments from customers by check, which Wesley deposited into business bank accounts that she maintained at Wells Fargo; and

k.   Transmitted wire communications in interstate commerce in furtherance of a scheme and artifice to defraud.

In furtherance of the conspiracy, the following overt acts were committed:

a.   During the course of the conspiracy, Wesley maintained in her Google Drive account an electronic copy of a "Certificate of Navajo Indian Blood" issued by "The Navajo Nation." The certificate included the Indian Census Roll Number associated with an enrolled member of the Navajo Nation, and the certificate had been altered to remove the enrolled member's name.

b.   During the course of the conspiracy, Wesley and co-defendant Richard Nisbet were joint signatories on a Wells Fargo bank account associated with Last Chance Jewelers, and bearing an account number ending in -7724 (hereinafter "Joint Wells Fargo Account");

        c.  On or about March 22, 2016, a check from co-defendant Christian Coxon, d.b.a. Turquoise River Trading, for $2795 was deposited into Wesley's Wells Fargo checking account, ending in -2114.

        d.  On or about April 25, 2018, co-defendant Christian Coxon and Wesley exchanged the following verbatim text messages:

> _Christian Coxon_: Have you already left for your trip or do you still have to pack
>
> _Laura Marye Lott_: I'm still packing what do you want me to pack
>
> _Christian Coxon_: I need some nicer neckwear.  I still have the little stuff from last time.  But the dragonfly and the other nice pieces are gone.
>
> _Laura Marye Lott_: Ok
>
> _Christian   Coxon_: I need single stone earrings rings bracelets pendants even neckwear if you have it.  Bring me whatever you have that is kind of Navajo style.
>
> _Laura Marye Lott_: Ok
>
> _Christian Coxon_:  Put me in some cuffs to
>
> _Christian Coxon_: Maybe some men's rings to

        e.  On or about March 9, 2016, Wesley sent a text message to co-defendant Richard Nisbet that stated, "When you go to the Philippines I need someone to figure out banking situation for menci and how I'll be sending money in the future."

        f.  On or about June 12, 2016, Wesley sent text messages to co-defendant Richard Nisbet of screenshots of jewelry that Wesley and her conspirators had manufactured and sold, that was listed on the website of T.H., a Native American jewelry store in Sedona, Arizona, and which listed the jewelry as "Navajo jewelry" and tagged the jewelry as "Navajo Native American" and "Sedona Native American Jewelry."

g. On or about July 4, 2013, co-defendant Richard Nisbet sent an email to Wesley, which included an attachment of an image of a ring, and which stated: *"I GONNA MAKE A LINE LIKE THIS AND SIGN IT R.NELSON I HAVE THAT STAMP I WONT YOU TO BE THE ONE IN CONTROL WE WILL GET WASFIE TO THINK IT IS REAL INDIAN, YOU TRADE WITH SOMEONE TO GET THESE, ONE DAY WHEN HE IS AT THE HOUSE YOU CAN COME TO ME AND ASK WHAT THEY ARE WORTH, SAYING YOU TRADED FOR THEM I WILL ASK WASFIE WHAT REAL INDIAN IS WORTH.  THIS IS BOYD TSOSIE WE CAN GET GOOD MONEY IF WE DO LIMITED AMOUNT AND ACT LIKE INDIAN"*.

h. On or about August 11, 2016, Wesley sent a text message to co-defendant Richard Nisbet that stated: *"Hey dad.  If you go to the Philippines in September can I go with you?  I really would like to learn production how it all works. . . . I really do need to learn the business aside from sales part."*

i. On or about December 14, 2016, Wesley sent an email to co-defendant Mency Remedio with the subject *"Is this serious!!!"*  The email stated: *"Are you guys kidding me with these bracelets you made below?  The order said same inlay and design for the black onyx and Opal I get one of each I didn't order 2 bracelets!!!!! I ordered 1"*.  Wesley's email included two images of jewelry.

j. On or about January 11, 2017, Wesley sent a text message to an unindicted conspirator who worked at an Indian-style jewelry and crafts store located in Galveston Texas, that stated: *"Good morning []!!!  Hope things are good!!!!! I sent the earrings the other day.  Also wanted to let you and [] know I'll be in Houston January 15 let me know if you guys want me to stop by."*

k. On or about September 26, 2017, Wesley submitted paperwork to the Department of the Interior to renew her import-export license, listing the name of her business as *"LMN Jewelers LLC"*, and the description of business as *"sales of jewelry."*

l. On or about October 5, 2017, Wesley sent an email to co-defendant

Richard Nisbet with the subject *"Re: ORDER N 4101."* The email stated: *"Here are two orders for N 4101 in sponge coral and TMSB I need silver dividers in the inlay also there is two orders (they look the same but I need 1 in standard men's size and 1 In standard women's size) Please look at each order carefully ☺ Thanks dad!"*

m. On or about February 21, 2018, Wesley sent a text message to co-defendant Richard Nisbet stating: *"Just got the package I'm thinking it's faster with fed ex."* On the same date, Nisbet replied by text message: *"You not taking into the fact you get three shipments a month. Month. It's cheapest. No duties or taxes. And I can ship real coral items. Speed. Is. the lowest of priorities. When we get three shipments. And I dont pay. Duties now that gsp is expires that's. 500-900 a month".*

n. On or about January 28, 2018, Wesley and co-defendant Waleed Sarrar met in person, and Sarrar gave Wesley a pendant and bolo tie designed by Native American artist Michael Perry.

o. On or about January 28, 2018, co-defendant Waleed Sarrar sent a text message to Wesley stating *"on the bolos one dozen different looks on the pendant one dozen different looks please."*

p. On or about January 30, 2018, co-defendant Richard Nisbet emailed jewelry makers in the Philippines instructions to make a mold of the Michael Perry pendant and bolo tie.

q. On or about February 1, 2018, co-defendant Waleed Sarrar emailed co-defendant Richard Nisbet photographs of other Michael Perry jewelry, and instructions regarding the design of new jewelry items based on the pendant and bolo tie.

r. On or about February 28, 2018, Wesley sent a text message to co-defendant Richard Nisbet stating, *"Can you get Willies bolo tie and his pendant and bracelets together so I can bring it back to him. Thank you."*

*s.  On or about March 14, 2018, co-defendant Waleed Sarrar sent text messages to co-defendant Richard Nisbet stating, "And if you can discuss the prices on my bolos and the pendants How much??"; and "Lura [sic] told me that she received them in the mail yesterday."*

*t.  On or about January 27, 2016, a jewelry shipment was sent from the Philippines to "Laura Lott, 2221 E. Union Hills #144 Phoenix, AZ 85024."*

*u.  On or about December 10, 2016, a jewelry shipment was sent from the Philippines to "Laura Lott, LMN Jewelers LLC 18850 N. 16th Place Phoenix, AZ 85024."*

*v.  On or about October 20, 2017, a jewelry shipment was sent from the Philippines to "Laura Lott, LMN Jewelers LLC, 18850 N. 16th Place, Phoenix, AZ 85024."*

*In violation of 18 U.S.C. §§ 371 and 2.*

Defendant shall swear under oath to the accuracy of this statement and, if defendant should be asked to testify about this matter, any intentional material inconsistencies in defendant's testimony may subject defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE BY DEFENDANT

I have read the entire plea agreement with the assistance of my attorney.  I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or

depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

Date ___11-21-19___                    _____
                                       LAURA WESLEY
                                       Defendant


## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with defendant. No assurances, promises, or representations have been given to me or to Defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

Date ___11/26/19___                    _____
                                       SETH APFEL
                                       Attorney for Defendant

- 18 -

1

## APPROVAL OF THE UNITED STATES

2      I have reviewed this matter and the plea agreement.  I agree on behalf of the United

3   States that the terms and conditions set forth herein are appropriate and are in the best

4   interests of justice.

5

6                                                MICHAEL BAILEY
                                                 United States Attorney
7                                                District of Arizona

8

Date  1/6/2020

9                                                PETER SEXTON
                                                 Assistant U.S. Attorney
10                                               MONA SAHAF
                                                 Trial Attorney, Criminal Division
11                                               Human Rights and Special Prosecutions

12

13                            ## ACCEPTANCE BY THE COURT

14

15

16   Date  10/2/2020                             United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28